IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 26–cv–01198–MDB

AHMED AHMEDSALEM,

      Applicant,

v.

JUAN BALTAZAR, Warden,
ROBERT HAGAN, AFODI,
TODD LYONS, Director of ICE, and
PAMELA BONDI, Attorney General,

      Respondents.

---

**ORDER**

---

This case is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition") filed by Ahmed Ahmedsalem ("Petitioner"). (Doc. No. 1.) Respondents have responded to the Petition (Doc. No. 15) and Petitioner has replied (Doc. No. 21[1]). Pursuant to 28 U.S.C. § 636(c), the Parties have consented to this Court's jurisdiction for all purposes. (Doc. Nos. 9; 13.) For the reasons that follow, the Court **GRANTS** the Petition.

**BACKGROUND**

---

[1] Prior the filing of the reply, counsel entered an appearance on behalf of Petitioner. The reply filed by counsel is structured similarly to an amended petition, and the Court initially construed it as such. (Doc. Nos. 21; 23.) However, Respondents requested that the Court instead construe the filing as a reply and disclaimed any desire to file any further briefing because the filing does not change "the central legal issue in this case." (Doc. No. 24 at 2.) The Court granted this request and construes the filing as a reply. (Doc. No. 25.)

Petitioner is a federal immigration detainee being held at the Aurora Detention Center in Aurora, Colorado. (Doc. No. 1 at 1.) Petitioner is a national of Western Sahara—an area adjacent to Mauritania, Algeria, and Morrocco—who entered the United States in 2024 and was detained by Immigration and Customs Enforcement ("ICE") shortly thereafter. (*Id.* at 8; Doc. No. 15 at 2.) He applied for asylum on January 13, 2025. (Doc. No. 21 at ¶ 19.) An immigration judge denied Petitioner's asylum request and ordered Petitioner's removal from the United States to Mauritania or Morocco on August 19, 2025. (*Id.* at ¶ 20.) The order became administratively final on September 18, 2025. (*Id.* at ¶ 24.)

Respondents initially sought travel documents for Petitioner from Mauritania. (Doc. No. 15 at 4.) When such documents were not received by November 6, 2026, Respondents sought travel documents from Algeria. (*Id.* at 4.) When such documents were not received by January 27, 2026, Respondents submitted a travel document request to the consulate of Morocco. (*Id.*) On March 19, 2026, the document request was sent to the regional attaché in Casablanca, Morocco. (*Id.*) Respondents "expect[ ] that it will take the Moroccan government approximately two months to issue the necessary travel document." (*Id.*) In a July 16, 2026, filing, Respondents indicated they were yet to receive travel documents from the Moroccan government. (Doc. No. 24 at 2.) Petitioner seeks his immediate release, arguing his prolonged detention violates the Fifth Amendment's Due Process Clause as recognized in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. No. 1 at 2–3.)

Respondents were ordered to show cause as to why the Petition should not be granted. (Doc. No. 3.) On April 29, 2026, Respondents filed their response. (Doc. No. 15.) In it, Respondents maintain Petitioner's detention is lawful because the government has provided

evidence that removal is likely and is actively working to secure Petitioner's deportation. (Doc. No. 15 at 8.) Respondents also say that, should the Court order Petitioner's release, the appropriate relief would be an order directing Petitioner's release on conditions to be set by the Department of Homeland Security. (Doc. No. 24 at 3.)

## ANALYSIS

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241. This includes "[c]hallenges to immigration detention." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).

The detention of noncitizens subject to a removal order is governed by 8 U.S.C. § 1231. Respondents do not dispute that Petitioner is subject to a final order of removal, and Respondents apparently concede that the statutory authority for Petitioner's detention arises from 8 U.S.C. § 1231. (Doc. No. 15 at 2.)

When a noncitizen is ordered removed, removal should ordinally be effectuated within a period of 90 days, known as the "removal period." 8 U.S.C. § 1231(a)(1). "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). After the 90-day removal period, ICE has discretion to detain inadmissible or criminal aliens. *See* 8 U.S.C. § 1231(a)(6). However, detention of an alien subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). After that, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

3

Petitioner alleges he has been detained for more than six months since the removal order was made final. (Doc. No. 1 at 9.) Respondents do not dispute Petitioner's assertion, therefore, Petitioner's detention exceeds the presumptively reasonable six-month period to effect his removal, as established by the Supreme Court in *Zadvydas.*

Petitioner bears the initial burden of showing a "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Here, Petitioner has now been detained for over nine months since his removal order became final. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."); *Fadwa v. Lyons,* 2025 WL 3525026, at *5 (D. Colo. Dec. 9, 2025) ("[B]ecause [petitioner] has been detained for almost four months after the presumptively reasonable timeframe ended, respondents must show that [petitioner's] removal will likely occur in the very near future."). Further, the record indicates Respondents unsuccessfully sought travel documents from two countries—Mauritania and Algeria. Moreover, though Respondents maintain that they are in the process of seeking documents from a third country, Morocco, it has been nearly six months since they submitted the request to the consulate of Morocco, and over four months since the request was sent to the regional attaché in Casablanca, Morocco. This, despite the representation that the Moroccan government was expected to issue travel documents within two months. (*See* Doc. No. 24 at 2). On this record, Petitioner has met his initial burden of showing removal is not likely in the reasonably foreseeable future. *See Fadwa*, 2025 WL 3525026, at *5 (granting a habeas petition when the government had unsuccessfully sought travel documents from the Palestinian

Territories and its ongoing request for travel documents from Israel had been pending longer than the expected period).

Accordingly, the burden shifts to Respondents to submit evidence sufficient to rebut Plaintiff's proffer. They have not. At most, Respondents simply repeat that it "takes approximately two months for the Moroccan government to issue a travel document." (Doc. No. 15-1 at Doc. No. 15-1 at ¶ 26 (declaration of Saul Alvarado, ICE deportation officer).) But these statements do nothing to account for the fact that this two-month window has long since passed. Moreover, Respondents do not offer evidence of follow-up with the Moroccan government, nor do they give this Court any reason to believe that the travel documents are soon forthcoming. Respondents' general statement that they are "working on" effectuating Plaintiff's removal is not enough. *See Zadvydas*, 533 U.S. at (rejecting the notion that "continued detention lawful as long as 'good faith efforts to effectuate ... deportation continue'"); *Ahmed v. Freden*, 744 F. Supp. 3d 259, 267 (W.D.N.Y. 2024) ("DHS's active efforts to obtain travel documents from Pakistan are not enough to demonstrate a likelihood of removal in the reasonably foreseeable future where the record before the Court contains no information to suggest a timeline on which such documents will actually be issued.").

### CONCLUSION

For the foregoing reasons, the Court finds that Petitioner is being detained in violation of the Fifth Amendment, and the Court will grant the Petition and order Petitioner's release from custody pursuant to 28 U.S.C. § 2241(c)(3). Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. No. 1) is **GRANTED**. It is further

**ORDERED** that Petitioner shall be released from custody within **24 hours of this Order.** It is further

**ORDERED** that Respondents may impose on Petitioner reasonable conditions of release or supervision. It is further

**ORDERED** that Respondents shall file a status report within **two (2) days** of this Order certifying compliance.[2]

Dated this 22nd day of July, 2026.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge

---

[2] The Court declines to address the request for attorney's fees made in Petitioner's reply. *See* Doc. No. 21 at 13.) The request fails to comply with the Local Rules of the District of Colorado. A motion for attorneys' fees must be filed in accordance with D.C.COLO.LCivR 54.3 *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit....The Motion shall include...for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed."); *Fadwa*, 2025 WL 3525026, at 8.